UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| REEMA SURGIT, ) | |
| ) | |
| Plaintiff, ) | No. 1:19-CV-07630 |
| ) | |
| v. ) | |
| ) | Judge Edmond E. Chang |
| CITY OF CHICAGO, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**MEMORANDUM OPINION AND ORDER**

Reema Surgit was a Chicago Police Officer, but now sues the City of Chicago for employment discrimination. Surgit alleges that she suffered discrimination based on her race, national origin, color, gender, and religion—and that, ultimately, the City fired her for those discriminatory reasons. R. 39, Second Am. Compl.[1] The claims are premised on Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000(e) *et seq*, and the Illinois Human Rights Act, 775 ILCS § 5 *et seq*.[2] Chicago has filed a partial motion to dismiss the claims, arguing that Surgit failed to exhaust her administrative remedies as to the discrimination claims based on color or religion, as well as on any claim of retaliation. R. 41, Mot. to Dismiss. Chicago also seeks to strike Surgit's request for

---

[1]Citations to the record are noted as "R." followed by the docket number and the page or paragraph number if applicable.

[2]This Court has subject matter jurisdiction over the federal-question claims under 28 U.S.C. § 1331, and supplemental jurisdiction over the state law claim under 28 U.S.C. § 1367.

punitive damages. *Id*. For the reasons discussed in this Opinion, Chicago's motion is granted in full.

## I. Background

As explained later in this Opinion, the City's motion is really a motion for judgment on the pleadings under Civil Rule 12(c). The Court therefore accepts all well-pled allegations as true and views the facts in the light most favorable to Surgit, who is the non-moving party. *See Hayes v. City of Chicago*, 670 F.3d 810, 813 (7th Cir. 2012).

Surgit is a female, Muslim, Arab-American of Middle Eastern descent; her family originally hales from Saudi Arabia. Second Am. Compl. ¶¶ 6, 14. In mid-December 2017, she became a Probationary Police Officer (a job title known by its acronym, PPO) with the Chicago Police Department. *Id*. ¶ 9. She began her employment at the 25th District, where she served without incident. *Id*. ¶ 15. Her troubles began as soon as she was transferred to the 1st District, in late September 2018. *Id*. ¶¶ 16–20. Her supervisor in the 1st District was Lieutenant Steven Konow. *Id*. ¶¶ 10, 12, 16. On Surgit's first day, Konow screamed at her and accused her of reporting late, asserting that she should have been there the day before. *Id*. ¶ 20. When Surgit told him that she had confirmed her start date by calling the District ahead of time, Konow accused her of lying. *Id*. ¶ 21. Surgit started the same day as PPO Bakker, a white, non-Muslim male, but Konow did not publicly berate Bakker even though he, too, had allegedly arrived late. *Id*. ¶¶ 19, 24. Surgit says Konow knew of her Arab ethnicity and Middle Eastern heritage "because she translate[d] Arabic for work and traveled to

2

Saudi Arabia for a family wedding." *Id.* ¶ 13. She also says that Konow knew of her Muslim faith because he knew that her family came from Saudi Arabia. *Id.* ¶ 14.

According to Surgit, Konow continued to harass, intimidate, and threaten her throughout her time at the 1st District. Second Am. Compl. ¶¶ 18, 28–33. He verbally abused her, including outright declaring, "I will fucking make sure to kick you out of 1st district." *Id.* ¶ 18. That type of communication is allegedly forbidden by the CPD Equal Employment Opportunity Policy, R. 39-3. Konow also ignored Surgit in group settings and refused to acknowledge her in the workplace, in contrast to his friendlier manner with non-Arab, non-Muslim officers. Second Am. Compl. at ¶ 28. At one point, Konow failed to inform Surgit that she was required to appear at an upcoming court date, even though his usual practice was to inform the officers in the District of their court dates. *Id.* ¶¶ 31–32. When Surgit, having received no notice of the upcoming court date, failed to appear, another of her supervisors, Lieutenant David Natelson, suspended her without warning. *Id.* ¶¶ 30–31. Konow asserted he had told Surgit about the date and made an entry in the CPD computer system that she had been notified—but did not produce the signature that Surgit should have provided under normal Chicago Police Department practice when notified of an upcoming court date. *Id.* ¶¶ 29, 33.

In November 2018, after Surgit was injured on bicycle duty, she says that Lieutenant Natelson refused to fill out an "Injured on Duty" report for her and accused her of lying about it. Second Am. Compl. ¶¶ 34–35. During a meeting in his office, during which Surgit cried, Natelson screamed and swore at her, saying, "Who's giving

3

you ideas?", "get the fuck out of my office," "that's why we are sending you to mornings," and threatening that he would "send [her] out of the fucking District." *Id.* ¶¶ 34–36. That same month, Konow again threatened to have Surgit removed from the 1st District. *Id.* ¶ 37. Also, that month, Surgit was denied a furlough request although such requests are rarely or never denied. *Id.* ¶ 38.

At some point after these events, Konow reassigned Surgit from her midnight shift to second shift. Second Am. Compl. ¶ 39. Around the time of this transition, Sergeant Hughes initiated a disciplinary action against Surgit for failing to change her address; the discipline charge was "ultimately dismissed by a commander." *Id.* ¶ 40.[3]

In April 2019, Surgit was suddenly demoted back to the police academy. Second Am. Compl. ¶ 42. A Sergeant Snelling who reviewed Surgit's paperwork told her that he did not see why she should have been moved from the 1st District and that "someone" had gotten her fired. *Id.* ¶ 43.[4] Another 1st District lieutenant told Surgit that Konow thought she needed more training. *Id.* ¶ 44. Surgit claims that most of the PPOs who were transferred to the academy were demoted for "wrongful conduct including, but not limited to, drug use, DUI, failing cycles more than five times, or violating an order of protection." *Id.* ¶ 45.

On May 13, 2019, Surgit was fired. Second Am. Compl. ¶ 48. She alleges that none of the other PPOs who had been demoted alongside her were or had been fired as of that time. *Id.* ¶ 45. Surgit claims that she "exercised reasonable judgment and

---

[3]Sergeant Hughes's first name does not appear in the Complaint.
[4]Sergeant Snelling's first name does not appear in the Complaint

4

performed on par with or above her counterparts during her time with the" Police Department. *Id.* ¶ 11. Because she was fired, Surgit has been denied other law enforcement jobs for which she has applied. *Id.* ¶ 50. She alleges that she faced discrimination, a hostile work environment, and was fired because of her race, ethnicity, religion, national origin, color, or sex (or for all or a combination of those reasons). *Id.* ¶¶ 17, 49.

In August 2019, Surgit filed (without a lawyer) a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC) and Illinois Department of Human Rights (IDHR). Second Am. Compl. ¶ 1.; R. 39-1 (EEOC Charge). She checked boxes indicating discrimination based on race, sex, and national origin. *See* EEOC Charge. For the dates that the discrimination took place, she gave only May 13, 2019 (the date she was fired). *Id.* In the section for detailing the "particulars" of the discrimination, she wrote that she was discriminated against due to her race, national origin, and sex:

> I began my employment with Respondent on or about December 15, 2017. My position was Police Officer. On or about May 13, 2019, I was discharged. I believe I was discriminated against because of my race, Asian, my national origin, Middle Eastern, and my sex, female, in violation of Title VII of the Civil Rights Act of 1964, as amended.

EEOC Charge. Surgit provided no further details or narrative (or if she did, they are not in the record). After the EEOC issued a right to sue letter, Surgit filed this lawsuit. R. 1. The operative complaint is the Second Amended Complaint. R. 39.

5

## II. Standard of Review

The City argues that Surgit failed to exhaust administrative remedies on certain claims, and styles its dismissal motion as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). But a failure to exhaust is an affirmative defense and thus a Rule 12(b)(6) motion—which testes the adequacy of the allegations to state a valid claim—is inapt, because plaintiffs need not plead around affirmative defenses in a complaint. *Mosely v. Bd. of Educ. of City of Chicago*, 434 F.3d 527, 533 (7th Cir. 2006). In reality, the proper vehicle to assert lack of exhaustion (if it is to be considered at the pleading stage) is a Rule 12(c) motion for judgment on the pleadings. If discovery is not needed to resolve the exhaustion defense, and "if the allegations of the complaint [viewed] in the light most favorable to the plaintiff show that there is no way that any amendment could salvage the claim," *id.*, then the Court may consider the motion at the pleading stage. Neither Surgit nor the City of Chicago disputes the propriety to resolve the exhaustion defense at this stage. Surgit asserted in her Complaint that she filed an EEOC Charge "for the matters alleged herein." Second Am. Compl. ¶ 1. She also attached the EEOC Charge as Exhibit A to her Complaint. She has not suggested in the Complaint or brief that any facts are missing from the record that would affect the exhaustion defense. So the Court can decide the exhaustion defense because "the allegations of [Surgit's] complaint itself set forth everything necessary to satisfy the affirmative defense." *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005). Put another way, "when all relevant facts are presented, the court may properly dismiss a case before discovery—typically through a Rule 12(c) Motion

for Judgment on the Pleadings—on the basis of an affirmative defense." *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012) (cleaned up).[5]

Generally speaking, a motion for judgment on the pleadings is governed by the same standard as a motion to dismiss under Rule 12(b)(6). *Hayes v. City of Chicago*, 670 F.3d 810, 813 (7th Cir. 2012). In deciding a motion for judgment on the pleadings, the Court must accept all well-pled allegations as true and view the alleged facts in the light most favorable to the non-moving party. *Id.* Judgment on the pleadings is proper if it appears beyond doubt that the non-moving party cannot prove any set of facts sufficient to support the claim for relief. *Id.* In deciding a motion for judgment on the pleadings, the Court considers the pleadings alone, which consist of the complaint, the answer, and any documents attached as exhibits. *N. Ind. Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 452 (7th Cir. 1998).

### III. Analysis

#### A. Exhaustion Requirement

The City of Chicago argues that Surgit's claims of discrimination based on color, religion, and retaliation must be dismissed because she did not present them in her EEOC Charge, so she has failed to exhaust those claims. Mot. to Dismiss at 1–2. In response, Surgit asks the Court to construe the EEOC Charge liberally. R. 45, Pl. Resp. at 4–5. As detailed in this Opinion, however, the EEOC Charge is so

---

[5]This opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

barebones that even an expansive interpretation of it does not cover color, religion, or retaliation.

Before presenting a particular claim in an employment discrimination lawsuit, the plaintiff must present it to the EEOC (or the parallel state antidiscrimination agency). 42 U.S.C. § 2000e-5(f); *see also Cheek v. W. and S. Life Ins. Co.,* 31 F.3d 497, 500 (7th Cir. 1994); *Cervantes v. Ardagh Group*, 914 F.3d 560, 564 (7th Cir. 2019). The purpose of this requirement is to put the employer on notice of what accusations it faces, and also to give the employer and the administrative agency the chance to resolve the employee's grievances before the employee turns to litigation. *Cheek*, 31 F.3d at 500. Because most employees who file discrimination charges are not attorneys, however, the Seventh Circuit instructs that allegations in EEOC Charges should be viewed expansively when deciding whether a particular claim is within the scope of the Charge. *Id.* "A Title VII plaintiff need not allege in an EEOC charge each and every fact that combines to form the basis of each claim in her complaint." *Id.* (cleaned up). Instead, a claim should be considered exhausted if it is "like or reasonably related to the EEOC charge, and can be reasonably expected to grow out of an EEOC investigation of the charges." *Cervantes*, 914 F.3d at 565 (cleaned up). To be considered "reasonably related" to the original charge, "the claims should involve the same conduct and implicate the same individuals." *Miller v. Am. Airlines, Inc.*, 525 F.3d 520, 525 (7th Cir. 2008). The same standard applies to exhaustion of claims under the Illinois Human Rights Act. *Cervantes*, 914 F.3d at 565.

### 1. Color

Chicago first argues that Surgit has not exhausted the claim of discrimination based on color because she "neither checked the box for discrimination based on color in her Charge nor referred [to] any facts relating to discrimination based on color." Mot. to Dismiss at 5. Surgit counters that, as an Arab American of Middle Eastern descent, she is a person of color, and the allegations of color discrimination are reasonably related to and grow out of her allegations of race and national origin discrimination. Pl. Resp. at 5. The problem with this argument is that the EEOC Charge is nearly devoid of factual narrative. It bears repeating the entirety of the Charge one more time:

> I began my employment with Respondent on or about December 15, 2017. My position was Police Officer. On or about May 13, 2019, I was discharged. I believe I was discriminated against because of my race, Asian, my national origin, Middle Eastern, and my sex, female, in violation of Title VII of the Civil Rights Act of 1964, as amended.

EEOC Charge. In essence, then, the Charge lists her job title, start and end dates, and the conclusions that she was discriminated against based on race, national origin, and sex. There simply are no allegations from which to reasonably link an accusation of color discrimination. For a court to hold that claims are reasonably related to allegations and grow out of those allegations, the Charge must *make* allegations.

In the cases cited by Surgit, courts were able to look beyond unchecked boxes and unclear charges to more detailed written narratives, or even attached documentation, that had been filed with the Charge. *See, e.g., Jenkins v. Blue Cross Mut. Hosp. Ins., Inc.,* 538 F.2d 164 at 168–69 (7th Cir. 1976) (holding that an employee could bring

9

a sex discrimination claim despite not checking that box because the narrative alleged that her supervisor "accused [her] of being a leader of the girls on the floor"); *Babrocky v. Jewel Food Co.*, 773 F.2d 857, 864–65 (7th Cir. 1985) (holding that the employee adequately alleged sex discrimination because the EEOC charge alleged that positions were segregated by sex, even though she did not explicitly allege that the employer had a rule limiting the positions by sex); *Gamble v. Birmingham S. R. Co.*, 514 F.2d 678, 687–89 (5th Cir. 1975) (holding that allegations of racial discrimination in promotions to supervisory positions were reasonably related to allegations of race bias in promotions to conductor); *Danner v. Phillips Petroleum Co.*, 447 F.2d 159, 160–62 (5th Cir. 1971) (holding that an employee's complaint that her job was "just taken from [her] and given to a man" encompassed not just her termination but the company policies that led to the termination).

Surgit argues that color discrimination is inherently equivalent to race discrimination, but that is not right. There is a difference between race and color discrimination, with the latter claim premised on "the particular hue" of the employee's skin. *Nickerson v. US Airways, Inc.*, 2016 WL 3563807, at *4–5 (N.D. Ill. July 1, 2016) (cleaned up). *Nickerson* cited and applied five other district court cases holding that a claim of color discrimination is not automatically related to a race discrimination claim. *Id.* at *4. So if Surgit is trying to equate the two, there is no basis to do that, as explained by *Nickerson*:

> [T]o the extent that [the plaintiff] intended to equate race with color in her EEOC charge, her color claim duplicates her race discrimination claim. ... But to the extent she argues that her EEOC charge raises a claim based on the color of her skin, nothing in the charge suggests that the EEOC's investigation

   into her race discrimination claim would have put [the employer] on notice that
   [the plaintiff's] complaint encompassed color discrimination as well.

*Id.* at *5 (citations omitted).

  In response, Surgit relies on *Gul-E-Rana Mirza v. The Neiman Marcus Group, Inc.*, 649 F. Supp. 2d 837 (N.D. Ill. 2009). But the reliance is misplaced. In *Mirza*, the employee had submitted two paragraphs of "particulars" in her EEOC Charge, alleging specific harassment and mistreatment by coworkers and supervisors. *Id.* at 853. Although the employee had not checked the "color" box on the Charge, the court held that she could pursue the color discrimination claim in the lawsuit. *Id.* at 856. The court pointed out that the employer had not argued that the charges of color discrimination involved different people or conduct than the other claims. *Id.* On those facts, the court concluded, "It is hardly obvious how allegations of discrimination based on race and national origin would throw the EEOC's investigators off the scent of a claim of discrimination based on color." *Id.* But there is a key difference between Mirza's case and Surgit's: Mirza's Charge gave the EEOC specific allegations to investigate. Surgit's Charge, by contrast, quoted in full above, is barebones. Here, there is simply no allegation to which a color discrimination claim can relate. Surgit failed to exhaust the claim and it must be dismissed.

### 2. Religion

  For similar reasons, the claim of religious discrimination must be dismissed too for lack of exhaustion. Surgit's claims of race, national origin, and sex discrimination provide no basis to which to relate a religious discrimination claim. By contrast, in the case that she cites linking religious and national origin discrimination, the

11

employee's written narrative recounted his coworkers' comments about his national origin, including telling him to "go back to Egypt." *Kamel v. Sanofi Pasteur*, 2015 WL 926427, at *7 (M.D. Pa. Mar. 4, 2015). Through this narrative, the plaintiff in that case had sufficiently exhausted a national-origin discrimination even though he had checked the box for religion and not national origin. *Id.* Although *Kamel* commented generally on the relationship between national origin and religion, its decision was based on those facts. *Id.* at *7–8. Again, Surgit's EEOC Charge provided no comparable narrative that would support a religious discrimination claim.

In arguing that no more was needed in the Charge, Surgit presents demographic statistics, contending that simply by asserting that her family comes from a majority-Muslim nation (or, more precisely, region of the world), she has sufficiently asserted religious discrimination. Pl. Resp. at 5–6. If that is right, then courts would have to read religious discrimination into every complaint of race or national origin discrimination filed by a plaintiff from a nation (or region) with a majority of adherents to one faith. That would be a significant gap in applying the exhaustion requirement to religious discrimination claims—and would make little practical sense. Plenty of employees no doubt experience racial and national origin discrimination without experiencing religious discrimination.

The one case cited by Surgit that comes closest to supporting her invocation of religious demographic statistics actually does not rely solely on those statistics. *Sasannejad v. Univ. of Rochester*, 329 F.Supp. 2d 385 (W.D.N.Y. 2004). In *Sasannejad*, the plaintiff filed a detailed Charge that included religious

12

discrimination: "Plaintiff clearly states [in his Charge of Discrimination] that, after the September 11 terrorist attacks, Dr. Weliky began treating him differently and then terminated him because he was born in Iran and a Muslim." *Id.* at 390. Like Surgit, Sasannejad did not check the box for "religion" on his EEOC Charge; unlike Surgit, he included a narrative that alleged religious discrimination. *Id.* at 390–91. Although the court commented that national origin and religious claims can sometimes be closely linked, its conclusion linking the two for Sasannejad was explicitly "based on the facts of this case." *Id.* at 391. Sasannejad's EEOC Charge allegations would have reasonably led the EEOC to investigate religious discrimination alongside national origin discrimination. *Id.* No facts like that apply in Surgit's case. To be sure, Surgit filed the Charge *pro se* and may have relied on the EEOC's intake assistance to complete it. Unfortunately, there is simply not enough in the Charge to conclude that religious discrimination was reasonably related to the claims in it.

### 3. Retaliation

At first glance, Count 4 (the state law claim for discrimination) of the Complaint seems to imply a retaliation claim in it. Second Am. Compl. ¶ 75 ("This retaliation for asserting her right to oppose discrimination violated her rights to be free from discrimination …"). Chicago moves to dismiss any potential claim for retaliation, arguing that retaliation too was not part of Surgit's EEOC Charge and does not reasonably relate to the claims in the Charge. Mot. to Dismiss at 6. In her response brief, Surgit clarifies that she is not bringing a retaliation claim. Pl. Resp. at 10. The Court thus dismisses any retaliation claim encompassed by Count 4.

13

### B. Punitive Damages

Surgit's prayer for relief in the Complaint includes a request for punitive damages. Second Am. Compl. at 12. Chicago moves to strike this request because as "a general rule, local public entities are immune from punitive damage awards in civil rights actions." *Kolar v. Sangamon Cty. of State of Ill.*, 756 F.2d 564, 567 (7th Cir. 1985). Surgit concedes this point in her response brief. Pl. Resp. at 10. The request for punitive damages is thus stricken.

### IV. Conclusion

The City of Chicago's partial motion to dismiss is granted. The following counts of Surgit's Complaint are dismissed (formally without prejudice because the dismissal is based on a lack of exhaustion): Count 3 (religious discrimination under Title VII); Count 4 in part (religious and color discrimination, as well as retaliation, under the IHRA); and any implied claim of color discrimination under Title VII. The request for punitive damages is dismissed.

ENTERED:

        s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: March 29, 2021

14